UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

CHARLES RAY SMITH,

           Plaintiff,           Case No. 1:21-cv-30

v.                                    Honorable Robert J. Jonker

KHRIS NEVINS et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Cook, Sanders, and Stevens. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claim against Defendant Leavitt.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following DRF officials: Assistant Deputy Warden Khris Nevins; Sergeant Unknown Fidler; Correctional Officers Unknown Leavitt and Unknown Cook; and Registered Nurses Pam Sanders and Kelly Stevens.

Plaintiff alleges that, on March 26, 2020, at approximately 3:19 p.m., Defendant Fidler came to Plaintiff's cell, Unit 200, cell #6. Fidler ordered Plaintiff to turn around to be handcuffed, and Plaintiff complied. Fidler handcuffed Plaintiff and escorted him into a small hallway, where half a dozen correctional officers awaited, and then into a holding room in the segregation unit, which contained two holding cages. Once in the holding room, Defendant Fidler turned Plaintiff over to Defendant Leavitt, but Fidler remained in the doorway during the entire subsequent incident.

Defendant Nevins entered the room. Nevins directed Defendant Leavitt to remove Plaintiff's cuffs. Leavitt did so, but he informed Plaintiff that, "if [Plaintiff] moved or tried anything [he] would be very sorry." (Compl., ECF No. 1, PageID.5.) Defendant Nevins then informed Plaintiff that there had been a change of plans related to Plaintiff's transfer and that Plaintiff would be going back to the Level-4 unit. Nevins continued, stating that Plaintiff was "going the easy way or the hard way." (*Id.*)

Plaintiff responded that he wanted to be placed back in segregation and wanted Nevins to follow prison policy by writing Plaintiff a misconduct ticket for refusing to follow a direct order. At this, Defendant Nevins nodded at Defendants Leavitt and Fidler and stated, "Do

it the hard way then." (*Id.*)  Defendant Leavitt then placed his forearm against the back of Plaintiff's neck and forced Plaintiff's face against the mesh gate.  Simultaneously, Defendant Leavitt kicked Plaintiff's legs from under him, causing Plaintiff to fall on the floor.  Leavitt then placed his knee on Plaintiff's back and neck, and Defendants Leavitt and Fidler re-handcuffed Plaintiff.  Defendants lifted Plaintiff off the floor and placed him into a restraint chair.

Plaintiff claims that he did not resist the officers' attempts to handcuff him.  During the course of the takedown and cuffing, Plaintiff screamed in pain and complained that the handcuffs were too tight.  Plaintiff alleges that he was forced to sit on his hands in the restraint chair, which increased the pain from the handcuffs.  According to Plaintiff, both Leavitt and Fidler ignored his complaints, and Defendant Nevins observed the entire incident.

Defendants Fidler, Leavitt, and several unknown officers wheeled Plaintiff to Level 4, Unit 1200, and violently tossed him into cell #35.  Once in the cell, Plaintiff was forced against the wall, dropped onto the floor, and then assaulted by Defendants Fidler and Leavitt, as well as other officers.  Defendants Fidler and Leavitt placed a riot shield against Plaintiff's neck and put their weight directly on the back of his head and neck.  Several other officers placed their weight on his him and twisted his arms, wrists, and fingers, nearly breaking them.  Plaintiff screamed from pain until he lost consciousness.  When he regained consciousness, Plaintiff saw several officers aim tasers at him and retreat from the room.

At approximately 5:00 p.m., Plaintiff's cellmate assisted him to the door.  Plaintiff asked Defendant Cook for medical attention for the injuries caused by the use of force.  Plaintiff showed Cook that there was blood on the floor, showed Cook the "scars" on his wrists, and stated that he was spitting up blood.  Defendant Cook refused to call health care, advising Plaintiff to send in a medical kite.

With the help of another prisoner, Plaintiff completed a medical kite, in which he explained what had happened and why he needed medical attention. He received a response on March 27, 2020, in which Defendant Sanders[1] stated that Plaintiff's claimed injuries did not amount to an emergency. Sanders instructed Plaintiff to kite health care again if his symptoms did not improve. Plaintiff sent another kite on April 7, 2020. Defendant Stevens responded to the second kite, setting an appointment for April 10, 2020. Plaintiff was seen on April 10.

Plaintiff filed a grievance about the assault. On April 28, 2020, Defendant Leavitt verbally threatened Plaintiff, stating, "You'll regret writing me up for that little love tap I gave you, I should have broken your fucking wrists[.] . . . Next time I'll make sure you got assaulted for sure and that you never walk again." (*Id.*, PageID.8.) An hour later, Defendant Leavitt ran over to the area in which Plaintiff was walking and said, "It's on now[.] . . . [H]ave [you] ever been tased?" Plaintiff did not respond and kept walking.

Plaintiff claims that Defendants Nevins, Fidler, and Leavitt violated his Eighth Amendment rights by using or allowing excessive force and that Defendants Cook, Sanders, and Stevens violated the Eighth Amendment by denying him medical care. Plaintiff also alleges that Defendant Leavitt retaliated against him. He seeks compensatory and punitive damages, together with an injunction that would ban any such future incident.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

---

[1] In paragraph 17 of his complaint, Plaintiff alleges that "Defendant Registered Nurse Pam *Saunders*" answered his medical kite. Plaintiff, however, spells Defendant's last name as "Sanders" in both the caption and list of defendants. The Court uses the name Plaintiff identifies in the caption and list of defendants.

4

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### III. Eighth Amendment

Plaintiff alleges two types of Eighth Amendment violations. First, he contends that Defendants Nevins, Fidler, and Leavitt used or approved the use of excessive force against him without a legitimate penological purpose. Second, he alleges that Defendants Cook, Sanders, and Stevens denied or delayed medical care for his injuries, in violation of the Eighth Amendment.

#### A. Excessive force

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* Analysis of a claim of excessive force must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37-39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining

6

whether the use of force is wanton and unnecessary, a court must evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Moreover, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

Upon initial review, Plaintiff's allegations against Defendants Nevins, Fidler, and Leavitt are sufficient to state a claim of excessive force.

### B. Denial of medical care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate-medical-care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863,

867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

9

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations against Defendants Cook, Sanders, and Stevens fail to state a claim. Plaintiff alleges that, when Defendant Cook saw him, Plaintiff's wrists were "scarred" from the handcuffs and he claimed to be spitting up blood. In addition, Defendant Cook was shown an unspecified amount of blood was on Plaintiff's floor. The circumstances alleged fail to support a conclusion that Plaintiff suffered from an obviously serious need for immediate medical treatment. *Rouster*, 749 F.3d at 446–51; *Blackmore*, 390 F.3d at 898. Instead, Plaintiff's described symptoms were relatively minor or non-obvious. *Balckmore*, 390 F.3d at 898.

Moreover, Defendant Cook did not prevent Plaintiff from seeking medical care by filing a kite with health care, he simply declined to call for urgent medical care. Indeed, Defendant

10

Cook expressly advised Plaintiff to submit a medical kite. And when Plaintiff did so, he received a response from health care the next day. Plaintiff has neither alleged nor shown any fact that would "establish the detrimental effect of the delay in medical treatment . . . ." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). Indeed, Plaintiff does not allege that he suffered more than cuts and bruises that did not require medical care to heal properly. Plaintiff therefore fails to establish that he faced an objectively serious need for immediate medical care, much less that Defendant Cook appreciated that risk and was deliberately indifferent to it.

Plaintiff next alleges that Defendant Sanders responded to his health-care kite by saying that his description of his injuries did not demonstrate that his need for medical care was an emergency. She advised Plaintiff to send another kite if his symptoms did not improve. As with Defendant Cook, Plaintiff's description of his symptoms and injuries were insufficient to establish that he suffered an obviously serious need for immediate medical attention. *Blackmore*, 390 F.3d at 898. And, again, as with Defendant Cook, Plaintiff does not allege that the lack of immediate treatment had a detrimental effect on his health. *Napier*, 238 F.3d at 742.

Finally, Plaintiff's allegations against Defendant Stevens provide even less support for his claim. Defendant Stevens did no more than answer Plaintiff's April 7, 2020, kite by scheduling an appointment for Plaintiff to be seen in health care. Plaintiff was examined at his appointment on April 10, 2020. Stevens' response demonstrates the opposite of deliberate indifference, as she promptly scheduled a medical appointment.

To the extent that Plaintiff implies that Defendant Stevens, as a supervisory nurse, was responsible for Defendant Sanders' response to Plaintiff's March 26, 2020, kite, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at

11

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Even if Plaintiff's allegations were sufficient to hold Sanders liable for her response to the March 26 grievance, those allegations could not support a claim against Defendant Stevens.

In sum, Plaintiff's allegations fall short of supporting an Eighth Amendment claim against Defendants Cook, Sanders, or Stevens. The Court therefore will dismiss Plaintiff's complaint against these Defendants.

### IV. Retaliation

Plaintiff alleges that Defendant Leavitt retaliated against him by telling him that he would "regret writing [Leavitt] up" and stating that Leavitt wished he had injured Plaintiff worse. Plaintiff also alleges that Leavitt implied that he might shoot Plaintiff with a taser.

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

12

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a claim against Defendant Leavitt.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Cook, Sanders, and Stevens will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment excessive-force claims against Defendants Nevins, Fidler, and Leavitt and Plaintiff's retaliation claim against Defendant Leavitt remain in the case.

An order consistent with this opinion will be entered.


Dated:   May 17, 2021                    /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE