UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES RAY SMITH, #484290,

        Plaintiff,                          Hon. Robert J. Jonker

v.                                            Case No. 1:21-cv-30

KHRIS NEVINS, et. al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 25). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF). The events giving rise to this action occurred at the Carson City Correctional Facility (DRF). Plaintiff initiated this action against the following DRF officials: (1) Assistant Deputy Warden Khris Nevins; (2) Sergeant James Fidler; (3) Corrections Officer (CO) Patrick Leavitt; (4) CO Unknown Cook; (5) Registered Nurse (RN) Pam Sanders; and (6) RN Kelly Stevens. (ECF No. 1).

Plaintiff alleges that on March 26, 2020, at approximately 3:19 p.m., Defendant Fidler came to Plaintiff's cell, Unit 200, cell #6. Fidler ordered Plaintiff to turn around to be handcuffed, and Plaintiff complied. Fidler handcuffed Plaintiff and escorted him into a small hallway, where half a dozen correctional officers awaited, and then into a holding room in the segregation unit, which contained two holding cages. Once in the holding room, Defendant Fidler turned Plaintiff over to Defendant Leavitt, but Fidler remained in the doorway during the entire subsequent incident.

Defendant Nevins entered the room. Nevins directed Defendant Leavitt to remove Plaintiff's cuffs. Leavitt did so, but he informed Plaintiff that, "if [Plaintiff] moved or tried anything [he] would be very sorry." Defendant Nevins then informed Plaintiff that there had been a change of plans related to Plaintiff's transfer and that Plaintiff would be going back to the Level-4 unit. Nevins continued, stating that Plaintiff was "going the easy way or the hard way."

Plaintiff responded that he wanted to be placed back in segregation and wanted Nevins to follow prison policy by writing Plaintiff a misconduct ticket for refusing to follow a direct order. At this, Defendant Nevins nodded at Defendants Leavitt and Fidler and stated, "Do it the hard way then." Defendant Leavitt then placed his forearm against the back of Plaintiff's neck and forced Plaintiff's face against the mesh gate. Simultaneously, Defendant Leavitt kicked Plaintiff's legs from under him, causing Plaintiff to fall on the floor. Leavitt then placed his knee on

Plaintiff's back and neck, and Defendants Leavitt and Fidler re-handcuffed Plaintiff. Defendants lifted Plaintiff off the floor and placed him into a restraint chair.

Plaintiff claims that he did not resist the officers' attempts to handcuff him. During the course of the takedown and cuffing, Plaintiff screamed in pain and complained that the handcuffs were too tight. Plaintiff alleges that he was forced to sit on his hands in the restraint chair, which increased the pain from the handcuffs. According to Plaintiff, both Leavitt and Fidler ignored his complaints, and Defendant Nevins observed the entire incident.

Defendants Fidler, Leavitt, and several unknown officers wheeled Plaintiff to Level 4, Unit 1200, and violently tossed him into cell #35. Once in the cell, Plaintiff was forced against the wall, dropped onto the floor, and then assaulted by Defendants Fidler and Leavitt, as well as other officers. Defendants Fidler and Leavitt placed a riot shield against Plaintiff's neck and put their weight directly on the back of his head and neck. Several other officers placed their weight on his him and twisted his arms, wrists, and fingers, nearly breaking them. Plaintiff screamed from pain until he lost consciousness. When he regained consciousness, Plaintiff saw several officers aim tasers at him and retreat from the room.

At approximately 5:00 p.m., Plaintiff's cellmate assisted him to the door. Plaintiff asked Defendant Cook for medical attention for the injuries caused by the use of force. Plaintiff showed Cook that there was blood on the floor, showed Cook the

"scars" on his wrists, and stated that he was spitting up blood. Defendant Cook refused to call health care, advising Plaintiff to send in a medical kite.

With the help of another prisoner, Plaintiff completed a medical kite, in which he explained what had happened and why he needed medical attention. He received a response on March 27, 2020, in which Defendant Sanders stated that Plaintiff's claimed injuries did not amount to an emergency. Sanders instructed Plaintiff to kite health care again if his symptoms did not improve. Plaintiff sent another kite on April 7, 2020. Defendant Stevens responded to the second kite, setting an appointment for April 10, 2020. Plaintiff was seen on April 10.

Plaintiff filed a grievance about the assault. On April 28, 2020, Defendant Leavitt verbally threatened Plaintiff, stating, "You'll regret writing me up for that little love tap I gave you, I should have broken your fucking wrists[.] . . . Next time I'll make sure you got assaulted for sure and that you never walk again." An hour later, Defendant Leavitt ran over to the area in which Plaintiff was walking and said, "It's on now[.] . . . [H]ave [you] ever been tased?" Plaintiff did not respond and kept walking.

Plaintiff claims that Defendants Nevins, Fidler, and Leavitt violated his Eighth Amendment rights by subjecting him to excessive force and that Defendants Cook, Sanders, and Stevens violated the Eighth Amendment by denying him medical care. Plaintiff also alleges that Defendant Leavitt retaliated against him. Plaintiff's claims against Defendants Cook, Sanders, and Stevens were dismissed on screening. (ECF No. 4). Defendants Nevins, Fidler, and Leavitt now move for summary judgment.

-4-

Plaintiff has responded to Defendants' motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant

probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

I. Use of Excessive Force

At the outset, the Court notes that Defendants have attempted to obfuscate the relevant questions before the Court. Defendants argue that "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society." (ECF No. 26, PageID.105). Defendants further argue that "prison staff cannot let prisoners dictate where they are housed and cannot capitulate to a prisoner's refusal to be transferred." (*Id.*). Plaintiff does not allege that he is allowed to decide where he is housed or that he is shielded from any unpleasantness associated with his status as a

prisoner. Rather, Plaintiff alleges that Defendants subjected him, without justification, to excessive force while transporting him from one area of the prison to another.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force that results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component examines whether an official's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Foos v. City of Delaware*, 492 Fed. Appx. 582, 588 (6th Cir., July 16, 2012). While the Eighth Amendment does not prohibit every *de minimis* use of physical force, where "prison officials maliciously and sadistically use force to cause harm," contemporary standards of decency "always are violated" regardless whether the force applied was *de minimis* or resulted in injury. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S.

320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Ibid.* As the Supreme Court recently observed:

> When prison officials maliciously and sadistically use force to cause harm, the Court recognized, contemporary standards of decency always are violated. . .whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
>
> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (internal citations and quotations omitted).[1]

Plaintiff alleges that, after being escorted into the "holding room," he refused an order to transfer out of segregation. Plaintiff understood that his refusal justified charging him with a misconduct. According to Plaintiff, however, Defendant Nevins instructed Defendants Leavitt and Fidler to obtain Plaintiff's compliance "the hard way," in response to which Leavitt assaulted Plaintiff. Defendants Leavitt and Fidler then placed Plaintiff in a transport chair after which Plaintiff was transported out of the segregation unit. Finally, Plaintiff alleges that after being placed in his new cell, he was assaulted by Defendants Leavitt and Fidler. Plaintiff's deposition testimony is consistent with the allegations in his complaint. (ECF No. 26-8, PageID.143-51). Plaintiff has also submitted affidavits from other prisoners who allege witnessing Plaintiff being assaulted by Leavitt and others after being placed in his new cell. (ECF No. 29 at PageID.201-02, 204-05).

Defendants advance several arguments in support of their motion, none of which are persuasive. Defendants first argue that the "security video. . .shows that any minimal force that was applied to [Plaintiff] was only for legitimate penological reasons related to his transfer." (ECF No. 26, PageID.105). This argument fails, however,

---

[1] An official can be liable for use of excessive force if he: (1) actively participates in the use of force; (2) supervises the official who used excessive force; or (3) owed the victim a duty of protection against the use of excessive force. *See, e.g., Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 402 (6th Cir. 2015).

-9-

because the security video submitted by Defendants fails to show what occurred when Plaintiff was in the "holding room." The video simply shows Plaintiff being led into the "holding room" followed by several officers. Plaintiff exited the room more than two minutes later and was placed in a restraint chair for transport. With respect to what actually happened while Plaintiff was in the "holding room," the parties offer incompatible versions. Absent video evidence of what occurred, this is a disputed factual matter a jury is tasked with resolving.

Defendants next argue that the video evidence fails to reveal "any indication" that Plaintiff was assaulted while in the "holding room." According to Defendants, this alleged lack of evidence undermines Plaintiff's credibility and, therefore, entitles them to summary judgment. First, even if the Court assumes that evidence of an assault is not evident from the video evidence, such does not definitively establish that Plaintiff was not assaulted. Moreover, as previously noted, whether Plaintiff was injured during the alleged assault is not dispositive because the malicious or sadistic use of force violates the Eighth Amendment regardless of whether such produces visible injury. Finally, Defendants may be correct that the record contains evidence that would support the conclusion that Plaintiff is less than fully credible. Such determinations, however, are not relevant on summary judgment and, furthermore, are not for this Court to make.

Finally, Defendant Fidler argues that the video evidence "undeniably" shows that he was not present when Plaintiff was placed in his new cell. (ECF No. 26, PageID.107). The video of this particular incident is taken from a considerable distance and fails to

definitively indicate who was present when Plaintiff arrived at his new cell. Defendant Fidler asserts he was not present whereas Plaintiff asserts that Fidler was present and assaulted him. Other prisoners assert that Plaintiff was, in fact, assaulted after being placed in his new cell. This factual dispute is fatal to Defendant Fidler's argument.

Accordingly, the undersigned recommends that as to Plaintiff's Eighth Amendment claims, Defendants' motion for summary judgment be denied.

II. Retaliation

Plaintiff alleges that, approximately one month after the events describe above, Defendant Leavitt told Plaintiff that he wished he had injured him even worse and, moreover, that Plaintiff would "regret" writing a grievance against Leavitt. Specifically, Leavitt allegedly told Plaintiff, "I should have broken your fucking wrists" and "next time I'll make sure you. . . never walk again." Leavitt also implicitly threatened to shoot Plaintiff with a taser. Plaintiff alleges that Leavitt made these comments in retaliation for Plaintiff filing a grievance against him.

To prevail on his retaliation claims, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Defendant Leavitt argues that he is entitled to summary judgment because the

statements he allegedly made to Plaintiff "fail to rise to the level of a sufficient adverse action." (ECF No. 26, PageID.109). The Court disagrees.

To constitute adverse action, an official's conduct must be capable of deterring a person of ordinary firmness from exercising the constitutional right in question. *See, e.g., Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018). While "some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury . . .[t]his threshold is intended to weed out only inconsequential actions. . ." Thus, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Ibid*. Defendant's argument that his alleged comments to Plaintiff were inconsequential or *de minimis* is unpersuasive.

The cases cited by Defendant in support of his argument are easily distinguishable. In one case, the plaintiff alleged merely that the defendant called him a "punk." *Wingo v. Tennessee Department of Corrections*, 499 Fed. Appx. 453, 454 (6th Cir., Sept. 7, 2012). In two of the cited cases, the Sixth Circuit merely observed that "minor threats" do not constitute adverse action. *See Smith v. Craven*, 61 Fed. Appx. 159, 162 (6th Cir., Mar. 19, 2003); *Carney v. Craven*, 40 Fed. Appx. 48, 50 (6th Cir., June 14, 2002). Finally, the fourth case cited by Defendant, does not appear to have even concerned a claim of retaliation. *See Miller v. Wertanen*, 109 Fed. Appx. 64, 65 (6th Cir., Aug. 25, 2004) (noting that "verbal harassment was not punishment" under the *Eighth Amendment*).

Simply put, none of the cases cited by Defendant stand for the proposition that threats of physical violence are insufficient to constitute adverse action. Moreover, the Sixth Circuit has directly recognized that "threatening the use of physical force" can, in fact, constitute adverse action sufficient to maintain a retaliation claim. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999); *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 503 (6th Cir., Apr. 13, 2011); *see also, Tucker v. Miller*, 2022 WL 3367416 at *8 (W.D. Mich., (Aug. 16, 2022) (while "vague threats of unspecified harm" do not constitute adverse action, "a specific threat of harm" can satisfy the adverse action requirement); *Torres v. Schafer*, 2020 WL 1861872 at *6 (W.D. Mich., Apr. 14, 2020) (even implicit threats of physical violence can constitute adverse action).

Defendant Leavitt allegedly told Plaintiff, "I should have broken your fucking wrists" and "next time I'll make sure you. . . never walk again." Leavitt also implicitly threatened to shoot Plaintiff with a taser. These actions, if true, are hardly inconsequential or *de minimis*. Accordingly, the undersigned recommends that, as to Plaintiff's First Amendment claim, Defendant Leavitt's motion for summary judgment be denied.

III. Plaintiff's Official Capacity Claims

In his complaint, Plaintiff states that he is suing Defendants in both their personal and official capacities seeking monetary damages and prospective injunctive relief. (ECF No. 1, PageID.2-3, 9). Defendants assert that they are entitled to immunity under

the Eleventh Amendment as to those claims asserted against them in their official capacity. The Court only partially agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As previously noted, Plaintiff is seeking monetary and prospective injunctive relief in this action. Defendants are entitled to immunity as to Plaintiff's claims for monetary damages against them in their official capacity. But the Eleventh Amendment does not preclude Plaintiff's claims against Defendants in their official capacity seeking prospective injunctive relief. Accordingly, the undersigned recommends that Plaintiff's claims for monetary damages against Defendants Nevins, Fidler, and Leavitt in their official capacity be dismissed.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 25) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's claims for monetary damages against Defendants Nevins, Fidler, and Leavitt in their official capacity be dismissed, but that otherwise Defendants' motion for summary judgment be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 23, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge